UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

          v.

HERSHEL MARION,

          Defendant.

_____/

Case No. 22-cr-20427

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER (ECF NO. 17)

### I.    INTRODUCTION

Defendant Hershel Marion is charged with conspiracy to possess with intent to distribute and to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); distribution of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1)(a) (Count Two); maintaining a drug premises, in violation of 21 U.S.C. § 856(a)(1) (Count Three); and unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b) (Count Four). ECF No. 1. Marion appeared for a detention hearing on August 29, 2022, and Magistrate Judge Anthony P. Patti ordered him detained pending trial.

1

Presently before the Court is Marion's Motion to Revoke Detention Order (ECF No. 17), filed on September 9, 2022.  The Motion is fully briefed, and the Court held a hearing on the matter on September 22, 2022.  For the following reasons, as well as those discussed on the record during the hearing, Marion's Motion to Revoke Detention Order (ECF No. 17) is **DENIED**.

## II.   FACTUAL & PROCEDURAL BACKGROUND

### A. Factual Background

#### 1.  The instant case

The Government alleges that Marion ran a drug house in Detroit, Michigan from March 2017 to May 2019 where he and associates sold heroin laced with fentanyl and cocaine.  ECF No. 1, PageID.1; ECF No. 20, PageID.86.  The Federal Bureau of Investigation (FBI) conducted a controlled buy during which a confidential source purchased crack cocaine and heroin, the compositions of which were confirmed by lab testing.  *Id*.  The FBI also wiretapped Marion's phone from March through April 2018, ECF No. 19, PageID.57, and surveilled the property with a pole cam, *id.* at PageID.61.  During its investigation, the FBI allegedly learned through interviews that Marion was in charge of the drug house and that he received all the proceeds for the drugs sold at the house.  ECF No. 20, PageID.87.

2

The FBI also allegedly learned of at least two overdoses that resulted in the deaths of the victims and one overdose in which the victim survived.  *Id.*  The Government proffers that Marion attempted to conceal at least two of these overdoes, once by having the unconscious person moved away from the drug house and once by instructing a witness to delete all text messages and other evidence surrounding the overdose.  *Id.* at PageID.88.

### 2.  Marion's Background

Marion is 39 years old.  He has had two formal jobs in his lifetime.  ECF No. 19, PageID.77.  He held the first for about a year during the period he allegedly ran the drug house.  He acquired his second job after his release in June 2022 from a three-year parole violation sentence with the Michigan Department of Corrections. ECF No. 17, PageID.42.  However, he only held that position for a day before his arrest in the instant case.  ECF No. 19, PageID.77.  *Id.*  Marion has a history of drug use but has completed two treatment programs.  *Id.* at PageID.76.  He is a lifelong resident of the Eastern District of Michigan and has strong community support.  *Id.* In addition to having many friends in the area, he is very close to both of his parents and his sister.  *Id.*  Marion lived with his sister prior to his incarceration in 2019 and would return to living with her if released on bond.

Among other contacts with the criminal justice system, Marion has a history of controlled substances offenses, probation or parole violations, and failures to appear. In 2001, he pled guilty to a felony controlled substance offense and was sentenced to one year of probation. ECF No. 20, PageID.87. Marion violated his probation, and his term was extended an additional two years. *Id*. He then violated that probation term twice and was sentenced to one to five years in prison. *Id*. Marion was convicted of another felony controlled substance offense in 2004. *Id*. He was sentenced to two to twenty years in prison. *Id*. In 2012, Marion was convicted after a jury trial of felony firearm offenses and sentenced to two years in prison and probation.[1] *Id.* at PageID.88. Marion also has seven outstanding warrants for failures to appear on minor offenses. *Id*. In addition, in 2003, he failed to appear for his arraignment in another felony controlled substances case that was ultimately dismissed. ECF No. 19, PageID.77.

Marion was on parole for the 2004 felony controlled substance conviction when the facts underlying this case allegedly took place. ECF No. 19, PageID.62, 67. He is presently on parole for that conviction as well as the 2012 felony firearm convictions.

---

[1] Marion appears to have been on probation on the 2004 conviction when he committed this offense. ECF No. 19, PageID.67.

4

**B. Procedural Background**

A grand jury indicted Marion on August 17, 2022. ECF No. 1. He appeared before Magistrate Judge Patti for his detention hearing on August 29, 2022. The Magistrate Judge found that Marion is subject to a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3) because he faces a potential ten-year sentence for a controlled substance offense. ECF No. 13, PageID.24. The Magistrate Judge found Marion had presented evidence sufficient to rebut the presumption.[2] *Id.* However, the Magistrate Judge "alternatively" found "(a) by a preponderance of the evidence that there is no condition or combination of conditions which will reasonably assure Defendant's appearance; and (b) by clear and convincing evidence that there is no condition or combination of conditions which will reasonably assure the safety of the community." *Id.*

> The Magistrate Judge's determination was based on evidence that Marion
>
> (1) was running a drug house involving the sale of crack and powder cocaine, heroin and fentanyl, while on parole, and is still on parole; (2) has multiple prior violations of parole; (3) has had three known drug overdoses by his customers, including two resulting in death; (4) took actions to dispose of evidence related to the overdose deaths of his customers, and poses a significant threat of obstruction of justice and a

---

[2] The Court acknowledges that the explanation portion of the Order states that Marion "has not introduced sufficient evidence to rebut [the] presumption." ECF No. 13, PageID.25. However, it is clear from the detention hearing transcript that this was an error. *See* ECF No. 19, PageID.80.

danger to potential witnesses; (5) has seven warrants for failure to appear in court, and has failed to appear for arraignment in a controlled substance delivery/manufacture case; (6) has a prior conviction for felony controlled substance delivery/manufacture for which he served a lengthy sentence and to which his current parole is related, but appears undeterred; and, (7) has a prior conviction for felony weapons possession by a felon, felony firearm, and misdemeanor firearms possession of a loaded firearm in or upon a vehicle, for which he is still on parole.  Additionally, Pretrial Services recommends detention.

*Id.*

Marion moves to revoke the detention order for three reasons.  First, Marion acquired gainful employment upon his release from his three-year parole violation sentence.  ECF No. 17, PageID.42.  Second, there is no evidence that Marion has interfered with the Government's investigation in the three years since his parole violation hearing.  *Id.* at PageID.42-43.  Finally, Marion appeared at his parole officer's request despite knowing he was likely to be arrested on the instant case. *Id.* at PageID.43.  He argues that these facts demonstrate that he would not flee if released on a GPS tether and that he does not pose a danger to the community.  *Id.* During the detention hearing before Magistrate Judge Patti and the Motion hearing before this Court, Marion also emphasized that the facts underlying the indictment occurred at least three years ago.  ECF No. 19, PageID.69.  For the following reasons, the Court disagrees and will deny the Motion.

6

### III.   LAW & ANALYSIS

#### A. Legal Standard

Title 18 U.S.C. § 3145(b) allows a district judge to review a magistrate judge's order detaining a defendant.  It is a *de novo* review.  *United States v. Williams*, 948 F. Supp. 692, 693 (E.D. Mich. 1996).  "The default position of the law . . . is that a defendant should be released pending trial."  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  Generally, for a defendant to be detained, the government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence."  *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).  In the normal case, a judicial officer shall order pretrial detention only if he or she "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).

However, because Marion is charged with a controlled substance offense carrying a potential penalty of ten years of imprisonment, there is a statutory presumption of detention.  18 U.S.C. § 3142(e)(3)(A).  This presumption can be rebutted if the defendant "comes forward with evidence that he does not pose a danger to the community or a risk of flight."  *Stone*, 608 F.3d at 945 (citation

7

omitted).  If he produces such evidence, "the presumption favoring detention does not disappear entirely[] but remains a factor to be considered among those weighed by the district court." *Id.* (citation omitted).  The other factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release.  18 U.S.C. § 3142(g).

## B. Discussion

As an initial matter, the Court finds that Marion has not "come[] forward with [sufficient] evidence that he does not pose a danger to the community or a risk of flight," *Stone*, 608 F.3d at 945 (citation omitted), to overcome the statutory presumption of detention under 18 U.S.C. § 3142(e)(3)(A).  However, even if Marion had overcome the presumption, the Court finds, for the reasons discussed *infra*, that the 18 U.S.C. § 3142(g) factors also militate against release.

### 1.  Nature and circumstances of the offenses charged

The first factor the Court must consider is the nature and circumstances of the offenses charged against Marion.  The nature and circumstances of these offenses are serious.  As Magistrate Judge Patti noted, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608

8

F.3d at 947 n.6 (collecting cases).  This is because "drug trafficking is a serious offense that, in itself, poses a danger to the community." *Id.*  Indeed, the Bail Reform Act, itself, suggests that crimes involving controlled substances are serious.  18 U.S.C. § 3142(g)(1) (instructing the court, when evaluating the nature and circumstances of the offense, to consider, *inter alia*, "whether the offense . . . involves a controlled substance").  The serious nature of controlled substances offenses is also reflected in the penalties associated with these crimes. Marion is facing a maximum sentence of twenty years on Count One and a mandatory minimum of twenty years with a maximum of life imprisonment on Count Two.  21 U.S.C. § 841(b)(1)(C); *see also* ECF No. 19, PageID.53.

The drugs Marion allegedly distributed—cocaine, crack cocaine, heroin, and fentanyl—are known to be both highly addictive and lethal.  Indeed, the Government proffers that Marion warned a client who had recently returned from rehab not to use the drugs he or she purchased because they were too strong.  ECF No. 19, PageID.59-60.  These drugs are known to kill people, and the Government proffers that at least three people did, in fact, overdose on drugs acquired from the property. Even more concerning, the Government alleges that Marion took steps to conceal at least two of these incidents.

9

The Court acknowledges that we do not, at this stage, know the quantity of drugs allegedly involved in this case. *See* ECF No. 22, PageID.100. However, the Court notes that this purported drug operation was long-running: it lasted for at least two years. Even small amounts of drugs distributed regularly for that length of time can be extremely damaging. More importantly, the Government claims that Marion *ran* the drug house for two years. And, as will be discussed in greater detail *infra*, Marion was on parole that entire time. Accordingly, the first factor weighs in favor of continued detention.

### 2. Weight of the evidence against Marion

The second factor the Court must consider is the weight of the evidence against Marion. "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948; *see also United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

The weight of the evidence of dangerousness is strong and troubling. Marion has already been convicted of two felony controlled substance offenses for the delivery and manufacture of cocaine, heroin or another narcotic. While those offenses occurred in the early 2000s, based on the charges he is presently facing, it appears that Marion's conduct is escalating. More importantly, Marion has several probation and parole violations. Indeed, the conduct underlying the instant case

10

occurred while he was on parole on the 2004 felony controlled substance conviction. Despite numerous attempts, it does not appear that Marion has ever had a successful probation or parole term.  Given his past behavior, it is likely that he would continue his drug distribution activities if released on bond.  Accordingly, this factor weighs in favor of continued detention.

### 3.  Marion's history and characteristics

The third factor requires that the Court review Marion's history and characteristics, which are statutorily separated into two categories.  The first category examines the "person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).  The second category asks "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."  18 U.S.C. § 3142(g)(3)(B).

The first category is neutral.  As discussed *supra*, Marion has lived in the Eastern District of Michigan his entire life and has strong community ties.  He is very close with his parents and sister and will be able to return to living with his

11

sister if released on bond.  However, while the Court is pleased by Marion's close familial relations, the Court would not allow Marion to return to his sister's house—where he lived during at least part of the time he was allegedly running the drug house.  Additionally, Marion's employment history is sparse: he had one job for about a year before his three-year parole violation sentence and another job for a day before his arrest in the instant case.  Nevertheless, the Court finds it promising that Marion found a job so soon after his release from his parole violation sentence. Marion self-reported that he began abusing alcohol and certain drugs at a young age, but the Court positively notes that he has completed two different treatment programs.

Finally, Marion's record of attendance at court proceedings leaves much to be desired.  In 2004, Marion failed to appear for an arraignment on a felony controlled substance charge that was ultimately dismissed.  While a defendant's behavior 18 years ago would ordinarily not be that probative of future behavior, Marion's more recent history is similarly discouraging.  Marion has seven outstanding warrants for failures to appear in 2019.  The Court recognizes that these seven warrants only represent four missed court dates but still finds this concerning.  The last time Marion was out of custody for a significant period of time, he seems to have generally disregarded his duty to appear in court.  The Court acknowledges that Marion

12

appears to have voluntarily appeared at his parole officer's request this summer,

despite knowing he was going to be arrested for the instant case.  This is promising,

but it is not enough to overcome his past flippancy regarding court appearances.

The second category weighs unequivocally in favor of detention.  As

discussed *supra*, Marion was on parole for his 2004 delivery and manufacture

conviction at the time he allegedly engaged in the conduct underlying this offense.

The Court is particularly concerned that Marion's conduct appears to be escalating

with respect to his drug activities.  Marion is also presently on parole for both that

conviction and the 2012 felony firearm convictions.  Accordingly, the third factor

weighs in favor of continued detention.

### 4.  Nature and seriousness of the danger posed by Marion's release

The fourth and final factor demands that the Court consider "the nature and

seriousness of the danger to any person or the community that would be posed by

person's release."  18 U.S.C. § 3142(g)(4).  The Court must "look to more than

whether or not the defendant himself has been guilty of physical violence," but also

to the safety of the community as a whole.  *United States v. Vance*, 851 F.2d 166,

169 (6th Cir. 1988).

As discussed *supra*, drug distribution is inherently dangerous.  *See Stone*, 608

F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger

13

to the community.") (collecting cases).  Marion asserts *Stone* is "inapposite" because the defendants in that case were charged with seditious conspiracy and using weapons of mass destruction.  ECF No. 22, PageID.101.  While the conduct at issue in *Stone* was more serious than the conduct charged here, this discrepancy does not undermine the value of the case to the Court's analysis.  The Sixth Circuit compared the *Stone* defendants "to other categories of cases where pre-trial detention is routinely ordered[,]" specifically, "drug dealers."  *Stone*, 608 F.3d at 947 n.6.  The Sixth Circuit then went on to explain that it regularly affirms the pretrial detention of drug dealers on dangerousness grounds even when they did not engage in violence and that the *Stone* defendants were even more deserving of detention than drug dealers.  *Id*.  Marion cannot, in good faith, argue *Stone*'s analysis does not apply to him.

As discussed *supra*, Marion has repeatedly violated the terms of his probation or parole.  Given his past behavior, it is likely that he will continue to distribute drugs if released on bond.  Those drugs will continue to harm members of the community, possibly resulting in more deaths.  And the Government has already alleged that Marion will attempt to conceal any overdoses that might occur, instead of obtaining immediate medical assistance for the victim.

14

Marion tries to distance himself from his conduct by emphasizing that it occurred three years ago.  ECF No. 22, PageID.100.  However, Marion was in state custody for the almost the entirety of that time.  While the Government has not proffered that Marion had to be disciplined while incarcerated or that he has interfered with the Government's investigation, the Court is hesitant to use the last three years as a barometer for his conduct if released on bond.  The Court reiterates that Marion was on probation or parole at the time many of prior offenses were committed, including those charged in the instant case.  Accordingly, the fourth factor weighs in favor of continued detention.

## IV.    CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Marion's Motion to Revoke Detention Order (ECF No. 17) is **DENIED**.


**IT IS SO ORDERED**.


/s/ Gershwin Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2022

15

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 26, 2022, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager

16